<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARNELL DAVIS,<br><br>        Plaintiff,<br><br>        v.<br><br>NEW JERSEY DEPARTMENT OF<br>CORRECTIONS, et al.,<br><br>        Defendants. | Civil Action No.: 10-6439<br><br><br>MEMORANDUM AND ORDER |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on two motions: (1) defendants New Jersey Department of Corrections, et al.'s (collectively, "Defendants") combined motion to dismiss Counts Two through Nine against all parties and motion for summary judgment on Counts Three through Five against defendants New Jersey Department of Corrections (the "Department"), New Jersey State Prison ("NJSP"), Michelle Ricci, Miguel Segarra, Keith Smith, and Martin Lillis's and (2) defendants Dr. Allan Martin, M.D., Dr. Abu Ahsan, M.D., and Dr. Michael Jordan, Ph.D.'s (collectively, "the Doctors") motion for summary judgment on Counts Three through Five.

On or about November 17, 2010, Plaintiff Carnell Davis ("Plaintiff") filed an amended complaint ("Plaintiff's FAC") in which Plaintiff sets forth nine causes of action: (1) negligence;

1

(2) failure to provide medical and mental health treatment under the New Jersey Constitution and the United States Constitution; (3) medical malpractice; (4) negligent and/or intentional infliction of physical harm; (5) intentional infliction of emotional distress; (6) civil rights deprivations under Title 42 United States Code section 1983; (7) violation of rights under the New Jersey Constitution; (8) unlawful discrimination under federal law; and (9) unlawful discrimination under New Jersey law.  On or about December 10, 2010, Defendants removed the action to this Court.

On or about February 4, 2011, Defendants filed a motion to dismiss.  On or about February 10, 2011, the Doctors filed a motion for summary judgment on Counts Three through Five.  Certain arguments put forward by Defendants in their motion to dismiss relied on materials outside the pleadings.  Accordingly, by an Order dated October 19, 2011, this Court converted Defendants' motion to dismiss into a motion for summary judgment as it pertained to Counts Three through Five.  Parties had until the end of business on November 2, 2011 to submit relevant briefs, affidavits, and evidence.  Materials accepted by the Court under the terms of this order were only considered in connection with Counts Three through Five.

For the reasons set forth below, this Court grants in part and denies in part Defendants' motion to dismiss and grants both motions for summary judgment.

# I

At all times relevant to this action, Plaintiff has been incarcerated at defendant NJSP which is controlled by the Department.  (Plaintiff's FAC, ¶ 1).

Defendant Administrator Michelle Ricci served until around August 1, 2010 as the administrator of NJSP, with responsibility for all of its operations.  (Plaintiff's FAC, ¶¶ 7-8). Defendants Miguel Segarra ("Mr. Segarra"), Keith Smith, and Martin Lillis are senior correction officers ("SCO") employed and/or supervised by the Department.  (Plaintiff's FAC, ¶ 9).

Defendant Dr. Martin served as the medical director at NJSP from before October 2006 until approximately April 2008.  (Plaintiff's FAC, ¶ 12).  Since approximately 2008, defendant Dr. Ahsan has worked as a physician in the medical unit of NJSP.  (Plaintiff's FAC, ¶ 14). Dr. Ahsan is responsible for supervising healthcare personnel and services, and is responsible for diagnosing and treating prisoners.  (Plaintiff's FAC, ¶ 14).  Defendant Dr. Jordan is a psychologist who serves on the mental health staff at NJSP.  (Plaintiff's FAC, ¶ 15).  Since October 2006, Dr. Jordan has been responsible for providing mental health services to inmates. (Plaintiff's FAC, ¶ 15).

<u>The Traffic Accident</u>

On or about October 24, 2006, Plaintiff was a passenger in a van owned by the Department and driven by SCO Segarra.  (Plaintiff's FAC, ¶¶ 19, 22).  According to Plaintiff, at the beginning of this trip, he was placed in the passenger compartment of the van without being secured to a seat by seatbelt or alternative safety restraint.  (Plaintiff's FAC, ¶ 26).  As the van traveled south on the New Jersey Turnpike, the van struck an unknown object.  (Plaintiff's FAC, ¶ 23).  SCO Segarra pushed his foot down on the brake pedal, which caused the van to stop abruptly.  (Plaintiff's FAC, ¶ 24).

Plaintiff was suddenly ejected from his seat and thrown forward into the wheel well of the van.  (Plaintiff's FAC, ¶ 27).  According to Plaintiff, SCO Segarra, SCO Smith, and SCO Lillis then transported Plaintiff to St. Francis hospital where, without waiting for hospital

personnel, they removed Plaintiff from the van and placed him on the ground outside of the emergency room.  (Plaintiff's FAC, ¶ 34).  Plaintiff claims to have suffered significant injuries as a result of this traffic accident.  (Plaintiff's FAC, ¶ 28).

<u>Medical Treatment of the Plaintiff</u>

Plaintiff contends that over the past four years, the injuries suffered in the van accident have resulted in pain and debilitating permanent injury.  (Plaintiff's FAC, ¶ 29).  NJSP medical records indicate that Plaintiff received intermittent medical attention to his back injury  between October 26, 2006 and June 22, 2010.  (*See e.g.*, Plaintiff's FAC, ¶¶ 49, 57, 64, 73, 82, 99, 118, 137, 161, 169).  The same records document Plaintiff's ongoing discomfort and dissatisfaction with his back treatment. (*See e.g.*, Plaintiff's FAC, ¶¶ 56, 80, 120).  Plaintiff was also subject to mental health treatment and monitoring between October 27, 2006 and January 12, 2009.  (*See e.g.*, Plaintiff's FAC, ¶¶ 25, 71, 88, 106, 111, 126, 134, 152).

Plaintiff alleges that since October 2006, "[Defendants] have been deliberately indifferent to plaintiff's medical and mental health condition, and his inability to get appropriate and necessary medical and mental health treatment.   These defendants have consciously disregarded plaintiff's medical and mental health needs."   (See Plaintiff's FAC, ¶ 196). According to the Plaintiff, Dr. Martin provided Plaintiff medical diagnostic and treatment services during Dr. Martin's tenure at NJSP.  Dr. Ahsan provided medical care to the Plaintiff on one occasion in June 2010.  (Plaintiff's FAC, ¶¶ 164-67).  Dr. Jordan met with Plaintiff to provide mental health treatment on a number of occasions during the time period covered by this claim.  (*See e.g.*, Plaintiff's FAC, ¶¶ 72, 110, 126, 142).  Plaintiff identifies no interactions between himself and Ms. Ricci, but notes that Ms. Ricci received a Department-authored, August 2006 report about the van accident.  (Plaintiff's FAC, ¶ 163).  Plaintiff also notes that

4

Ms. Ricci "looked in" on a June 2010 meeting between Plaintiff and his attorney.  (Plaintiff's FAC, ¶ 164).

# II

<u>Jurisdiction of the Court</u>

"When subject matter jurisdiction is at issue, a federal court is generally required to reach the jurisdictional question before turning to the merits."  *See Baltimore County v. Hechinger Liquidation Trust*, 335 F.3d 243, 249 (3d Cir. 2003).  Pursuant to 28 U.S.C. § 1331, this Court has "federal question" jurisdiction to hear the claims in Count 2, Count 6, and Count 8 arising from alleged violations of rights protected by the U.S. Constitution, the Americans with Disabilities Act 42 U.S.C. § 12131, et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq.

"District courts [] have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."  28 U.S.C. § 1367(a).  State and federal claims are part of the same case or controversy if they "derive from a common nucleus of operative fact" and "would ordinarily be expected to [be] tr[ied] [] all in one judicial proceeding . . . ."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  The state law claims in Counts Two through Five, Count Seven, and Count Nine revolve around many of the same "operative facts" as the federal question claims:  inadequate care and discrimination by Defendants since October 2006.  Count One concerns negligent acts occurring on October 24, 2006 in connection with the van accident and subsequent delivery of Plaintiff to St. Francis Hospital.  (Plaintiff's FAC, ¶ 174-188).  The relationship between the accident and Plaintiff's physical condition, which is central to the federal claims, indicate that one would expect them both to be tried in one proceeding.  Thus,

supplemental jurisdiction includes all state claims.

## III

Standard on a Motion to Dismiss

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all allegations in the pleading and all reasonable inferences that can be drawn therefrom, and must view such allegations and inferences in the light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994).   A cause of action should be dismissed only if the alleged facts, taken as true, fail to state a plausible claim. *See Iqbal*, 129 S. Ct. at 1950.

While a court will accept well-pleaded allegations as true for the purposes of the motion to dismiss for failure to state a claim, a court will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Iqbal*, 129 S. Ct. at 1949;  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997).  On the contrary, the pleadings must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (citation omitted).  A party must set forth "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

State Entities as Defendants

Plaintiff seeks relief from the Department and its facility NJSP.   As such, any fault proven against the Department will be identical to NJSP's fault and any relief granted against the Department will be identical to the relief granted against NJSP.   NJSP is dismissed from this case as a redundant defendant.[1]  *See Brinson v. Coastal State Prison,* 2009 WL 890574, *2 (S.D. Ga. April 1, 2009) (dismissing state prison because it lacked independent legal existence from co-defendant state); *Klatch-Maynard v. Sugarloaf Twp.*, 2008 WL 3992283, *4 (M.D. Pa. Aug. 27, 2008) (dismissing municipal agency defendant because municipality was also a defendant).

<u>Count Two:  Failure to Provide Medical and Mental Health Treatment Under the New Jersey Constitution and the United States Constitution</u>

The complaint alleges that the Department, Ms. Ricci, and the Doctors were aware of Plaintiff's serious medical and mental health needs and failed to provide adequate care.  This appears to be a "deliberate indifference" claim sounding in the Eighth Amendment as applied to the states through the Fourteenth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Plaintiff asserts violations of other federal and state constitutional rights based on the same facts. The additional constitutional claims are all either duplicative or inapposite.

Claims made pursuant to the U.S. Constitution's Fifth, Ninth, and Fourteenth Amendment are dismissed.   Where "an explicit textual source of constitutional protection" addresses particular state actions, relief should not be sought under the amorphous concept of substantive due process.  *Gardner v. McGroarty*, 68 F. App'x. 307, 311 (3d Cir. 2003) (*quoting Albright v. Oliver,* 510 U.S. 266, 273 (1994)).  As the Eighth Amendment is directly implicated by Plaintiff's suit, the claim pursuant to the Fourteenth Amendment's guarantee of substantive

---

[1]

The specific grounds raised by the defendants for dismissing NJSP will not be discussed in this opinion as all claims against NJSP are dismissed.

due process is dismissed.  (*See* Plaintiff's FAC, ¶198, 201, 202, 214, 228).  Plaintiff's Fifth Amendment claim in paragraphs 201, 202, and 214 must be dismissed because the complaint lacks any allegation of federal action.  *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983) (*citing Pub. Util. Comm'n v. Pollak*, 343 U.S. 451, 461 (1952)).  The Ninth Amendment claim set forth in paragraphs 201, 202, and 214 is dismissed because that amendment confers no substantive rights for the purposes of a constitutional claim.  *Fiorello v. WAMU*, 2010 WL 5392923, *10 (D.N.J. 2010), *reh'g denied* 2011 WL 810114 (*citing Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir.1986)).

All claims in Count Two based on provisions of the Constitution of the State of New Jersey are dismissed.  Article 1, paragraph 12 of the state constitution secures the right to be free from cruel and unusual punishment.  Deliberate indifference is a cognizable claim under this provision of the New Jersey Constitution and is analyzed identically to a deliberate indifference claim made under the Eighth Amendment.  *Jumpp v. Power*, 2009 WL 1704307, *4 (D.N.J. June 18, 2009) (citations omitted).  Hence, the state constitutional claim for deliberate indifference is redundant and will be dismissed.  Article 1, paragraph 1 of the New Jersey Constitution is an analogue of the Fourteenth Amendment, securing rights to substantive due process, procedural due process, and equal protection of the law.  This state constitutional claim is dismissed for the same reason that the Fourteenth Amendment claim was dismissed.  That is, it is best to rely on protections articulated in the "explicit text."  *Cf. Albright v. Oliver*, 520 U.S. 266, 273 (1994).

Plaintiff's other state constitutional claims concern rights not implicated by the complaint's allegations.  Paragraph 7 of Article 1 of the New Jersey Constitution bars unreasonable searches and seizures.  Paragraph 21 of Article 1 of the New Jersey Constitution is a savings clause akin to the Ninth Amendment of the United States Constitution and has never

been held to provide any affirmative right concerning medical care or prisoner treatment. Neither provision is relevant to the allegations in this case.  The claims in paragraph 203 of the complaint pursuant to Article 1 paragraphs1, 7, 12 and 21 of the state constitution are dismissed.

Count Two will be reviewed as a deliberate indifference claim made pursuant only to the Eighth Amendment of the United State Constitution.  Plaintiff agrees that this cause of action should be dismissed against the Department because it is not a "person" under either section 1983 or the New Jersey Civil Rights Act ("NJCRA").  (*See* Plaintiff's Opposition Br., p. 21).

Defendants contend that this cause of action should also be dismissed with respect to the Doctors and Ms. Ricci based on the applicable statute of limitations.  (*See* Defendants' Moving Br., p. 25).  However, Plaintiff alleges violations by Ms. Ricci, Dr. Ahsan, and Dr. Jordan occurring within the statute of limitations period and can also pursue claims outside the limitations period based on New Jersey tolling doctrine.

The statute of limitations for a section 1983 claim is set by the relevant state's limitations period for a personal injury action.  *Wilson v. Garcia*, 471 U.S. 261, 276 (1985).  In New Jersey that period is two years.  N.J. Stat. Ann. § 2A:14-2 (2011).  The same two year limitations period applies to claimed violations of the New Jersey Constitution made pursuant to the NJCRA.  *Citta v. Borough of Seaside Park*, 2010 WL 3862561, *10  n.3 (D.N.J. Sept. 27, 2010).  Furthermore, the statute of limitations for any claim against a New Jersey public entity or public employee is two years.  N.J. Stat. Ann. § 59:8-9 (2011).

Defendants contend that "[a]ll of [Plaintiff's] complaints of improper medical and mental health treatment arose from 2007 to September 2008."  (Defendants' Moving Br., p. 28). Plaintiff did not file the amended complaint until November 2010.  Defendants maintain that this means that all claims in Count Two are time-barred.  (*See* Defendants' Moving Br., p. 27).  In

fact, more recent wrongdoing is alleged.  Plaintiff alleges that in 2009, an orthopedic surgeon documented that Plaintiff continued to suffer harm, allegedly as a result of Defendants' refusal to provide "the benefit of a muscle strengthening program to readjust his back."  (Plaintiff's FAC, ¶ 155).  The complaint states that Plaintiff was removed from the medical health roster on January 12, 2009, ten days after Department records indicated that "[Plaintiff] has quite a bit of difficulty coping . . . ."  (Plaintiff's FAC, ¶¶ 151-52).  It is alleged that Ms. Ricci, Dr. Ahsan, and Dr. Jordan were at NJSP during this time.  (Plaintiff's FAC, ¶¶ 7, 14, 15).  As such, Plaintiff may proceed with all New Jersey and federal constitutional claims that arose within the two years preceding November 17, 2010, the date on which Plaintiff filed the Amended Complaint.

This Court must next address whether tolling principles allow Plaintiff to set forth claims based on events occurring more than two years prior to the filing of the amended complaint. Tolling procedures for a section 1983 action are set by state law.  *Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000).  NJCRA claims are subject to the same tolling rules as section 1983 claims. *C.f. Citta,* 2010 WL 3862561, *10  n.3 (holding that common purpose of NJCRA and 1983 supported application of same limitations period).   Plaintiff relies upon New Jersey's "continuing violation" doctrine as a means of preserving these otherwise-stale claims. (*See* Plaintiff's Opposition Br., pp. 24-25).  Contrary to Defendants' assertions, section 1983 claims may qualify for tolling under this doctrine.  *Carter v. Pennsylvania Dept. of Corrections*, 2008 WL 5250433, *9-10 (E.D. Pa. Dec. 17, 2008) (tolling prisoner's section 1983 deliberate indifference claims); *see South Salem St. Assocs., LLC v. Planning Bd. of Twp. of Montville*, 2008 WL 4647539, *9-10 (N.J. Super. Ct. App. Div. Oct. 21, 2008) (tolling 1983 substantive due process claim).  *See generally Shomo v. City of New York,* 579 F.3d 176, 181 (2d Cir. 2009). *But see Speth v. Goode,* 2011 WL 221664, *7 (D.N.J. Jan. 20, 2011) (noting that the Third

Circuit has rejected application of the continuing violations doctrine outside the employment discrimination context in all but two instances).

"A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (3d Cir. 2001) (internal quotation marks and citation omitted).   Under the doctrine, plaintiff bears the burden of establishing: (1) that at least one unlawful act occurred within the limitations period, and (2) that the time-barred acts and recent acts should be considered one continuing pattern of violations. *McGann v. Collingswood Police Dep't*, 2011 WL 2600725, *5 (D.N.J. June 28, 2011) (*citing West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754-55 (3d Cir. 1995); *see also Wilson v. Wal-Mart Stores*, 158 N.J. 263, 272 (1999).

Each defendant's conduct is separately evaluated to determine if that defendant engaged in a continuing pattern of violations.   Thus, the plaintiff must identify a wrongful act committed within the limitations period by each defendant.   *See Shomo,* 579 F.3d at 184; *Ozoroski v. Maue*, 2011 WL 1304603, *14-15 (M.D. Pa. Mar. 31, 2011); *Fuchilla v. Prockop*, 682 F. Supp. 247, 257 (D.N.J. 1987).   Dr. Martin ceased employment at NJSP in April 2008.   (Plaintiff's FAC, ¶ 12).   Plaintiff makes no allegations regarding Dr. Martin that occurred within the two year statute of limitations, so the continuing violations doctrine cannot apply against Dr. Martin.   As it pertains to Dr. Martin, Count Two is dismissed.

Plaintiff alleges wrongful acts by Ms. Ricci, Dr. Ahsan, and Dr. Jordan that occurred within the statute of limitations.   The Court must determine if those recent acts are linked to acts occurring earlier than November 2008 in a continuing pattern of violations.   Analysis of whether conduct constitutes a continuing pattern revolves around three factors:

(1) subject matter-whether the violations constitute the same type

11

of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*Cowell*, 263 F.3d at 292 (citation omitted).

First, considering that Plaintiff's claims all revolve around allegedly insufficient medical and mental health treatment, it is evident that Plaintiff has set forth continuing violations of the same "subject matter."  Second, Plaintiff identifies instances of allegedly deficient diagnosis and treatment, occurring regularly between October 2006 and June 2010.  (*See generally* Plaintiff's FAC, ¶¶ 36-172 ).  These allegations constitute "recurring" acts.  Third, Plaintiff's amended complaint demonstrates that none of the Defendants' wrongful actions prior to November 17, 2008 were of a sufficient "degree of permanence" to trigger accrual of a claim.

This third factor is the most critical prong of the continuing violation analysis.  *Foster v. Morris*, 208 F. App'x 174, 178 (3d Cir. 2006).  Defendants identify four specific events which they believe should have prompted Plaintiff to seek judicial relief years before the filing of this action: (1) Plaintiff's complaints about inadequate medical care in June 2007; (2) Plaintiff's complaints about insufficient pain medication in January 2007; (3) the cancellation of a mental health goal in January 2008; and (4) the termination of further physical therapy in January 2008.  (Defendants' Motion to Dismiss, p. 27).  Where a plaintiff reasonably believes that no final decision regarding his medical care had been reached, the continuing violations doctrine may apply even after repeated instances of inadequate care.  *Carter,* 2008 WL 5250433, *10.  Plaintiff allegedly requested and obtained limited psychological counseling and non-prescription pain medication up until filing his complaint.  (*See* Plaintiff's FAC, ¶¶ 142, 137).  Based on this

12

conduct, it appears that Plaintiff lacked "requisite information . . . [demonstrating] an injury and its cause" to file suit before November 2010.  *See Kichline v. Consolidated Rail Corp.*, 800 F.2d 356, 360 (3d Cir. 1986).

Accordingly, Plaintiff's "failure to provide medical and mental health treatment" claims made pursuant to the U.S. Constitution's Eighth Amendment may proceed against Ms. Ricci, Dr. Ahsan, and Dr. Jordan.

Count Three:  Medical Malpractice

The Department seeks dismissal of Count Three (medical malpractice), asserting that the claim is time-barred.  This claim is subject to a two year statute of limitations.  N.J. Stat. Ann. § 2A:14-2 (2011).  Plaintiff appears to allege breaches of care occurring up until the filing of the complaint.  However, none of the timely allegations concern Dr. Martin and the claim will be dismissed against him.

This claim is revisited later in the opinion in connection with disposition of the summary judgment motions.

Count Four:  Negligent and Intentional Infliction of Physical Harm

A review of New Jersey law reveals no common law or statutory claims described as "negligent infliction of physical harm" or "intentional infliction of physical harm."  As these causes of action do not exist under New Jersey law, the Count must be dismissed in its entirety for failure to comply with Rule 8(a).

Count Five:  Intentional Infliction of Emotional Distress

Defendants assert that the statute of limitations bars claims made under Count Five.  Intentional infliction of emotional distress is subject to a two year statute of limitations.  N.J. Stat. Ann. § 2A:14-2 (2011).  Plaintiff appears to allege wrongful acts by the Department

13

occurring up until the filing of the complaint and may pursue relief for claims that are timely. However, Plaintiff alleges no conduct by the SCOs or Dr. Martin that are dated within two years of the filing of the amended complaint. Count Five is dismissed against the SCOs and Dr. Martin.

This claim is revisited later in the opinion in connection with disposition of the summary judgment motions.

<u>Count Six: Section 1983 Claims of Civil Rights Deprivations</u>

As mentioned above, Plaintiff agrees to the dismissal of this cause of action against the Department. (*See generally* Plaintiff's Opposition Br., p. 21). The statute of limitations defense detailed above requires dismissal of Dr. Martin.

With respect to the substance of this claim, it is unclear how Count Six differs from Count Two. In Count Two, Plaintiff claims that Defendants violated the Eighth Amendment by failing to provide adequate medical and mental health care. Similarly, Plaintiff alleges in Count Six that Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights to adequate care. (Plaintiff's FAC, ¶ 228). An apparent distinction is that Count Six includes allegations that Defendants failed to train and/or supervise employees in addition to demonstrating deliberate indifference. (*See generally* Plaintiff's FAC, ¶¶ 229-30). As discussed below, the Court finds that Plaintiff has failed to properly plead a supervisory liability claim and any remaining allegations in Count Six merely duplicate Count Two.

The exact scope of supervisory liability is currently subject to some controversy. But, it is clear that supervisors are not vicariously liability for a subordinate's wrongs; the plaintiff must identify affirmative conduct by the defendant. *Rizzo v. Goode*, 423 U.S. 362, 377 (1976). In this case even the most lenient phrasing of the standard would require dismissal because Count Six is

primarily comprised of "conclusory statements" with little or no facts to support the allegations. For instance, Plaintiff states that "[Defendants] have failed properly to train Department personnel to avoid the constitutional violations alleged in this complaint.  This failure to train reflects a policy of deliberate indifference to the constitutional rights of plaintiff."  (Plaintiff's FAC, ¶ 229).  Plaintiff continues: "[Defendants] have failed properly to supervise Department personnel to avoid the constitutional violations alleged in this complaint. This failure to supervise reflects a policy of deliberate indifference to the constitutional rights of plaintiff . . . ." (Plaintiff's FAC, ¶ 230).  As on all motions to dismiss, the Court must review the complaint and "disregard 'naked assertions devoid of further factual enhancement' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Santiago*, 629 F.3d at 131 (*quoting Iqbal*, 129 S. Ct. at 1949).

The Third Circuit has recognized that supervisory liability can arise under two different circumstances:

> [First,] [i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm. . . . [Second, a] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.
>
> *FN5 A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

The remaining facts in the amended complaint fail to support a claim of supervisory liability against Ms. Ricci.  There is no plausible claim of "policymaking" supervisory liability because Plaintiff failed to identify any policy established or enforced by Ms. Ricci that was

causally related to the alleged violations. Plaintiff also failed to state a plausible claim for the second form of supervisory liability - "notice and acquiescence" liability. Plaintiff alleges that Ms. Ricci was responsible for all custody operations at NJSP. (Plaintiff's FAC, ¶ 8). Plaintiff alleges that the Doctors – Ms. Ricci's subordinates – committed constitutional torts. (*See* Plaintiff's FAC, ¶¶ 193-214). But, Plaintiff's only remaining allegations regarding Ms. Ricci are that Ms. Ricci was notified of Plaintiff's injuries in the van accident in October 2006 and that Ms. Ricci "looked in" on a June 2010 meeting between Plaintiff and his attorney. (Plaintiff's FAC, ¶¶ 163-64). These allegations are too sparse to support a cause of action.

Plaintiff's amended complaint lacks sufficient facts to support a claim of supervisory liability against Drs. Ahsan and Jordan. Plaintiff's failure to identify an improper policy dooms any claim of policymaking supervisory liability. Plaintiff's failure to identify any subordinates of the Doctors who committed a constitutional torts dooms any claim for "notice and acquiescence" liability. According to the complaint, Dr. Ahsan is responsible for supervising healthcare personnel at NJSP. (Plaintiff's FAC, ¶ 14). The complaint also alleges that Dr. Jordan had responsibility for providing mental health services at NJSP. (Plaintiff's FAC, ¶ 15). However, Plaintiff never identifies any named or John Doe defendants who are supervised by either Dr. Ahsan or Dr. Jordan and who violated Plaintiff's constitutional rights. Absent any "subordinate violations", there can be no supervisory liability. The facts alleged do not create a plausible claim that either doctor ordered, participated in, or acquiesced to a subordinate's violations.[2]

---

[2]

As Plaintiff failed to state actionable claims against Ms. Ricci, Dr. Martin, Dr. Ahsan and Dr. Jordan, the Court declines to analyze whether they may have a qualified immunity defense at this time.

16

Accordingly, Count Six is dismissed in its entirety.

<u>Count Seven:  Violation of State Constitutional Rights</u>

As mentioned above, Plaintiff agrees to the dismissal of this cause of action against the Department.  (*See generally* Plaintiff's Opposition Br., p. 21).

Count Seven primarily consists of allegations that Defendants were deliberately indifferent to Plaintiff's medical and mental health needs and deprived Plaintiff of needed care. (Plaintiff's FAC, ¶¶ 234-37).   These claims duplicate Count Two and should be dismissed. Plaintiff makes one unique claim in Count Seven:  unconstitutional failure to maintain medical records.  (Plaintiff's FAC, ¶ 238).   However,  this conclusory allegation is insufficient to state a plausible claim for relief.  *Santiago*, 629 F.3d at 131 (*quoting Iqbal*, 129 S. Ct. at 1949).

Accordingly, Count Seven is dismissed in its entirety.

<u>Count Eight:  Unlawful Discrimination Under Federal Law</u>

The private enforcement mechanisms of the American with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("RHA") are both limited.  "Under Title II of the ADA, plaintiffs may not sue individual defendants in their personal capacities, but must instead sue the state, state entities, or defendants in their official capacities." *George v. Penn. Dep't of Correcs.*, 2010 WL 936778, *7 (M.D. Pa. Mar. 11, 2010).  Similarly, claims brought pursuant to Section 504 of the RHA can only name individuals in their official capacities. *Thomas v. Pennsylvania Dep't of Corr.,* 2008 WL 68628, at *5 (W.D. Pa. Jan 4, 2008); *c.f. Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (holding that states, but not persons in their individual capacity, were subject to Section 504 liability).  Thus, claims under the ADA and RHA cannot move forward against

Ms. Ricci and the Doctors in their individual capacities.  Any official capacity ADA[3] and RHA[4] claims against Ms. Ricci and the Doctors would be redundant in this case because such claims are equivalent to a claim against co-defendant the Department.  Count Eight will be dismissed as it pertains to Ms. Ricci and the Doctors.

All defendants assert that Count Eight should be dismissed in its entirety as time-barred. (*See* Defendants' Moving Br., pp. 25-29).  New Jersey's two-year limitations period for personal injury actions applies to claims under the ADA and the RHA.  *Foster v. Morris*, 208 F. App'x 174, 177 n.3 (3d Cir. 2006) (ADA); *Howard v. Mendez*, 304 F. Supp. 2d 632, 634-35 (M.D. Pa., 2004) (RHA).  The continuing violations doctrine may be used to toll suits brought under the ADA. *Lee v. Sherrer*, 2009 WL 901777, *7-9 (D.N.J. Mar. 31, 2009) (tolling disabled prisoner's claim).  As RHA claims are subject to state tolling rules, *Howard*, 304 F. Supp. 2d at 635, the continuing violations doctrine is also applicable to RHA claims.

Plaintiff's allegations of discrimination are not grounded in any specific event or date. The complaint simply relates that Plaintiff has been disabled since October 2006 and has been unable to participate in certain unspecified medical, recreational, and social programs at the NJSP due to Defendants' failure to provide special accommodations.  (Plaintiff's FAC, ¶¶ 241,

---

[3]

*Baer v. Masonite Corp.*, 2011 WL 2929166, * 2 (N.D. Ind. July 15, 2011) (holding that ADA claims against individual defendants in their official capacity are effectively claims against the employer and should be dismissed as superfluous); *Alster v. Goord*, 745 F. Supp. 2d 317, 339 (S.D.N.Y. 2010) (same); *Spiess v. Pocono Mountain Regional Police Dept.*, 2010 WL 2985959, *5 (M.D. Pa. July 26, 2010) (noting that official capacity ADA claims are redundant to claims against police department).

[4]

*Gallagher v. Town of Fairfield*, 2011 WL 3563160, *3 (D. Conn. Aug. 15, 2011) (holding that it is duplicative to bring RHA official capacity claims in addition to claims against the government entity); *McCachren v. Blacklick Valley School Dist.*, 217 F.Supp.2d 594, 599 (W.D. Pa. 2002) (same).

242, 247).  If this ambiguity causes frustration, Defendants may resort to Rule 12(e).  Reading the complaint in the light most favorable to the non-moving party, Plaintiff appears to allege that discriminatory conduct by Department employees continued up until the filing of the complaint.

Accordingly, Count Eight may proceed against the Department.

Count Nine:  Unlawful Discrimination Under NJ Law

All defendants assert that Count Nine should be dismissed in its entirety as time-barred. (*See* Defendants' Moving Br., pp. 25-29).  Claims under New Jersey's Law Against Discrimination ("NJLAD") are subject to a two years statute of limitations.  *Montells v. Haynes*, 627 A.2d 654, 659-60 (N.J. 1993).  The continuing violations doctrine may be used to toll NJLAD claims. *Lee*, 2009 WL 901777, at *7-9 (tolling disabled prisoner's claim).

As discussed above, Plaintiff appears to allege a timely claim against the Department. The complaint also alleges recent wrongdoing by Ms. Ricci, Dr. Ahsan, and Dr. Jordan. However, Plaintiff declares that Dr. Martin was not employed at NJSP during the two years preceding the amended complaint.  There is no timely NJLAD claim against Dr. Martin and the continuing violations doctrine cannot save untimely claims against him.

Accordingly, Count Nine may proceed against the Department, Ms. Ricci, Dr. Ahsan, and Dr. Jordan.

# IV

Standard on a Motion for Summary Judgment

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S.

19

317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment.  *Anderson*, 477 U.S. at 247-48.  If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate."  *Alevras v. Tacopina*, 226 F. App'x. 222, 227 (3d Cir. 2007).

<u>The Notice of Claims Requirement</u>

Both the Defendants' and Doctors' motions for summary judgment allege that the single

notice of claim submitted by the Plaintiff fails to meet the requirements of The New Jersey Tort

Claims Act ("Tort Claims Act") for purposes of Counts Three through Five.[5]  The statute

imposes a strict notice requirement on plaintiffs pursuing tort actions against the state and its

employees.

> A claim relating to a cause of action for death or for injury or
> damage to person or to property shall be presented as provided in
> this chapter not later than the ninetieth day after accrual of the
> cause of action. After the expiration of six months from the date
> notice of claim is received, the claimant may file suit in an
> appropriate court of law. The claimant *shall be forever barred*
> *from recovering against a public entity or public employee* if:
> a.)  He failed to file his claim with the public entity within 90 days
> of accrual of his claim except as otherwise provided . . ; or
> b.)  Two years have elapsed since the accrual of the claim; or
> c.)  The claimant or his authorized representative entered into a
> settlement agreement with respect to the claim.
>
> N.J. Stat. Ann. § 59:8-8 (emphasis added).

Plaintiffs are statutorily-bound to include certain details in their notice, including the

date, place, and circumstances of the incident giving rise to the claim, a description of the injury,

the identity of state employees causing the injury, and even known unrealized injuries.  N.J. Stat.

Ann. § 59:8-4(d).  These details are critical in light of the statute's purposes of providing the

public entity a chance to: (1) conduct an administrative review and negotiate settlements; (2)

investigate and prepare a defense; (3) correct any conditions or practices giving rise to the claim;

and (4) obtain advance notice of potential liabilities.  *See Beauchamp v. Amedio*, 751 A.2d 1047,

1052-53 (N.J. 2000).  Minimal defects in a notice may be excused where the plaintiff

demonstrates the absence of any prejudice to the defendants and "substantial compliance" with

---

[5]

As discussed above, Count Four of Plaintiff's Amended Complaint failed to state a claim upon
which relief could be granted and therefore will not be discussed further in the summary
judgment analysis.

the requirements.  *See Lebron v. Sanchez,* 970 A.2d 399, 406 (N.J. Super. Ct. App. Div. 2009)

But the notice of claim is never sufficient unless it "give[s] some indication of the asserted basis

of the public entity's liability" such that the public entity can "promptly . . . investigate the

claim." *Newberry v. Twp. of Pemberton*, 726 A.2d 321, 326 (N.J. Super. Ct. App. Div. 1999).

       Plaintiff filed a notice of claim on or about January 12, 2007.  (Doctors' Statement of

Undisputed Material Facts*,* ¶ 1; *see also* Defendants' Motion to Dismiss, Ex. A).  The state has

not received any other relevant notices from Plaintiff.   (Doctors' Statement of Undisputed

Material Facts, ¶¶ 5-6).  The 2007 notice of claim solely pertained to the events of October 24,

2006 and lacked any reference to the occurrence of medical malpractice or intentional infliction

of emotional distress at NJSP.  (*See* Doctors' Statement of Undisputed Material Facts, ¶¶ 2-4).

On the other hand, Count Three of the Amended Complaint alleges medical malpractice by the

Department, Ms. Ricci, Dr. Ahsan, and Dr. Jordan.[6]  (Plaintiff's FAC, ¶¶ 215-20).  Count Five

alleges intentional infliction of emotional distress by the Department, Ms. Ricci, Dr. Ahsan, and

Dr. Jordan.  (Plaintiff's FAC, ¶¶ 224-25).  Plaintiff does not dispute any of these facts.

       Plaintiff's offers three arguments for denying the motion for summary judgment.  First,

Plaintiff was "foreclosed" from filing a second, supplementary notice of claim.  (Plaintiff's

Opposition Br., p. 25).  Second, filing a timely notice of claim regarding inadequate care claims

is impossible because the accrual date is only identified ex post facto.  (McGinty's Certification,

¶ 21).  Third, the original notice of claim provided adequate notice regarding all counts in this

lawsuit because the van accident was the genesis of all claims.  (Plaintiff's Opposition Br., p.

27).

---

[6]

This analysis reflects the fact that medical malpractice claims against certain defendants were
already dismissed at the Rule 12(b)(6) stage as time-barred.

This Court is not persuaded that any of these theories creates a genuine issue of fact. Multiple notices of claim can be filed over time for related causes of action. *See e.g.*, *Estate of Crawford v. City of Newark*, 2008 WL 1831265, *1 (N.J. Super. App. Div. (April 25, 2008); *Madjar v. State of N.J. Dep't of Corrs.*, 1993 WL 152066, *3-4 (D.N.J. April 5, 1993). And, while it may be difficult to ascertain the proper time to file a notice of claim regarding deliberate indifference claims, that is not the issue here. Defendants seek to dismiss Counts Three and Five which concern medical malpractice and intentional infliction of emotional distress. The accrual dates of these torts is ascertainable so filing a timely notice would be possible.

Finally, the Court is convinced that Plaintiff's notice of claim gave so little information related to Counts Three and Five that it did not even substantially comply with the statute. The notice "failed to give . . . any reasonable clue" that Plaintiff sought relief for medical malpractice and intentional infliction of emotional distress. *See Newberry*, 726 A.2d at 326. Notifying Defendants of the car accident did nothing to facilitate the Doctors' review and/or correction of the alleged mistreatment giving rise to Counts Three and Five. Thus, finding Plaintiff in substantial compliance with the notice of claims requirement would contravene the purpose of the statute.

There is no genuine issue of fact regarding the contents of Plaintiff's notice of claim. As a matter of law, Plaintiff's notice of claim failed to satisfy the requirements of the Tort Claims Act for Counts Three and Five.

Accordingly, summary judgment must be granted to the Defendants on Counts Three and Five.

# V

This Court has reviewed all submissions.  For the reasons set forth in the above Memorandum,

IT IS on this 10th day of November 2011,

ORDERED that Defendants' Motion to Dismiss dated February 4, 2011 (Docket Entry 10) is granted in part and denied in part;

ORDERED that the Motion for Summary Judgment by Doctors Martin, Ahsan, and Jordan dated February 10, 2011  (Docket Entry 11) is granted;

ORDERED that Counts One through Nine are dismissed with prejudice against NJSP;

ORDERED that Count Two is dismissed with prejudice against the Department and dismissed without prejudice against Dr. Martin; Plaintiff may proceed with Count Two against Ms. Ricci, Dr. Ahsan, and Dr. Jordan;

ORDERED that Count Three is dismissed with prejudice against all parties;

ORDERED that Count Four is dismissed with prejudice against all parties;

ORDERED that Count Five is dismissed with prejudice against all parties;

ORDERED that Count Six is dismissed with prejudice against the Department, Ms. Ricci, Dr. Martin, Dr. Ahsan, and Dr. Jordan;

ORDERED that Count Seven is dismissed with prejudice against the Department, SCO Segarra, SCO Smith, SCO Lillis, Ms. Ricci, Dr. Martin, Dr. Ahsan, and Dr. Jordan;

ORDERED that Count Eight is dismissed with prejudice against Dr. Martin, Ms. Ricci, Dr. Ahsan, and Dr. Jordan; Plaintiff may proceed with Count Eight against the Department; and

ORDERED that Count Nine is dismissed without prejudice against SCO Segarra, SCO Smith, SCO Lillis, and Dr. Martin; Plaintiff may proceed with Count Nine against the Department, Dr. Ahsan, and Dr. Jordan.


*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.


November 10, 2011

25